IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION

GINO J. SCALABRINI
286 Allview Avenue
Brewster, NY 10509,
on behalf of himself and all others similarly
situated,

      Plaintiff,

vs.

PMAB, LLC
c/o Cogency Global, Inc., Registered Agent
212 South Tryon Street, Suite 1000
Charlotte, NC 28281-0001

and

BAPTIST HOSPITAL, INC.
c/o Elizabeth Callahan, Registered Agent
1717 North E St., Suite 320
Pensacola, FL 32501

and

GULF COAST COLLECTION BUREAU, INC.
c/o Jack W. Brown, III, Registered Agent
5630 Marquesas Circle
Sarasota, FL 34233,

      Defendants.

Case No. 7:18-cv-11152

CLASS ACTION COMPLAINT (JURY DEMAND ENDORSED HEREON)

NOW COMES Plaintiff Gino J. Scalabrini, by and through his attorneys, and for his Complaint hereby avers, alleges and prays:

**INTRODUCTION**

1. This action is brought as a class action by Gino J. Scalabrini on behalf of himself and all others similarly situated for declaratory judgment, actual damages, and statutory damages that

the practices of defendant PMAB, LLC ("PMAB"), Baptist Hospital, Inc. ("Baptist") and Gulf Coast Collection Bureau, Inc. ("Gulf Coast") violated the Fair Debt Collection Practices Act, 15 U.S.C. 1692 *et seq.* ("FDCPA") and New York's Codes, Rules and Regulations of Third-Party Debt Collectors (23 NYCRR 1 *et seq.* or "NYCRR") , which, *inter alia,* prohibit debt collectors from engaging in abusive, deceptive, and unfair practices.

## PARTIES AND JURISDICTION

2. Gino J. Scalabrini is a citizen and resident of Brewster, New York. Mr. Scalabrini was subjected to unauthorized, illegal medical procedures – procedures done without his consent and directly contrary to his instructions – by (and at) Baptist Hospital, Inc. in Santa Rosa County, Florida.

3. Defendant PMAB is a limited liability company organized under the laws of North Carolina with its principal place of business in Charlotte, North Carolina.

4. Defendant Baptist Hospital, Inc. ("Baptist") is corporation organized under the laws of Florida with its principal place of business in Pensacola, Florida. Baptist owns and operates the fictitious entity Gulf Breeze Hospital (aka Baptist Gulf Breeze Hospital) where Mr. Scalabrini's unauthorized, illegal medical procedures were performed.

5. Defendant Gulf Coast is a corporation organized under the laws of Florida with its principal place of business in Sarasota, Florida.

6. This Court has jurisdiction, pursuant to 28 U.S.C. §1331, because this case involves a federal question (the FDCPA), 15 U.S.C. 1692k(d). (Declaratory relief is available pursuant to 28 U.S.C. §§2201-2202.) The Court also has jurisdiction, pursuant to 28 U.S.C. §1332, because the amount in controversy exceeds $75,000, exclusive of interest and costs, and because this is a civil action between citizens of different states. Finally, the Court has jurisdiction over Plaintiffs' state claims pursuant to the Court's supplemental jurisdiction in 28

2

U.S.C. §1367 (in addition to diversity jurisdiction).

7. Pursuant to 28 U.S.C. §1391, venue is proper in this Court because a substantial part of the alleged events and omissions giving rise to Plaintiff's claims (Defendants' attempts to collect a debt in violation of the FDCPA) occurred within this judicial district – at Mr. Scalabrini's home in Brewster, New York.

## FACTUAL ALLEGATIONS

8. Defendants are "debt collectors" as defined in 15 USC §1692a(6). Plaintiff is a "consumer" within the meaning of 15 U.S.C. §1692a. The alleged debt is a consumer "debt" within the meaning of 15 U.S.C. §1692a.

9. On information and belief, Defendants PMAB and Gulf Coast regularly attempt to collect debts incurred for personal, family or household purposes which are alleged to be due another, and Defendant Baptist uses the fictitious name Gulf Breeze Hospital to indicate that a third person is collecting or attempting to collect such debts.

10. Baptist performed unauthorized, illegal medical procedures on Mr. Scalabrini, then made repeated attempts to unlawfully harass Mr. Scalabrini into paying for those unauthorized medical procedures. Furthermore, Baptist sicked collection agencies PMAB and Gulf Coast (as its agents) to unlawfully harass Mr. Scalabrini into paying unconsionable charges for the unauthorized medical procedures (for example, over $600 for less than 15 minutes with a physical therapist and a bag of ice.) As part of their efforts to unlawfully harass Mr. Scalabrini into paying unsicionable charges for the unauthorized medical procedures, Baptist, PMAB and Gulf Coast also damaged Mr. Scalabrini's credit rating.

## FACTS

11. Mr. Scalabrini incorporates by reference the allegations in Paragraphs 1 through

10 of his Complaint as if fully rewritten herein.

12. This count arises from the federal FDCPA and centers around a campaign of harassment and abuse towards Mr. Scalabrini.

13. The debt at issue, which PMAB, Gulf Coast and Baptist allege is owed to Baptist by Mr. Scalabrini, is a consumer debt as defined by the FDCPA.

14. PMAB, Gulf Coast and Baptist are debt collectors under the FDCPA. As debt collectors, they were required to abide by the FDCPA's applicable requirements.

15. PMAB and Gulf Coast tried to collect monies (and debt) allegedly owed by Mr. Scalabrini for unauthorized medical procedures rejected, prohibited and never authorized by Mr. Scalabrini, but performed by Baptist.

16. On or around July 3, 2017, PMAB sent (and Baptist caused to be sent) the "First Collection Notice" for some of the cost of the unauthorized medical procedures rejected, prohibited and never authorized by Mr. Scalabrini.

17. On or around August 1, 2017, Mr. Scalabrini sent (and shortly thereafter, PMAB received) the "First Dispute Notice" – informing PMAB (and Baptist) that the debt was illegitimate, and the monies were not owed because "I will not pay for surgery I did not authorize, including the required postoperative day 1 visit of December 16, 2016."

18. Despite the First Dispute Notice, Baptist did nothing to determine whether or not the medical procedures at issue were rejected, prohibited or authorized by Mr. Scalabrini. Yet, on or around August 14, 2017, Baptist provided a "Gulf Breeze Hospital" "Patient Statement of Account" for some of the cost of the unauthorized medical procedures rejected, prohibited and unauthorized by Mr. Scalabrini. That Patient Statement of Account was provided to PMAB and directed Mr. Scalabrini make payment to "Gulf Breeze Hospital."

19. Despite the First Dispute Notice, neither PMAB nor Baptist did anything to determine whether or not the medical procedures at issue were rejected, prohibited and never authorized by Mr. Scalabrini. Despite failing to do so, on or around August 17, 2017, PMAB sent (and Baptist caused to be sent) the "Second Collection Notice" for some of the cost of the unauthorized medical procedures rejected, prohibited and never authorized by Mr. Scalabrini.

20. On or around October 25, 2017, Baptist sent Mr. Scalabrini a "Gulf Breeze Hospital" "Billing Notice" for more of the cost of the unauthorized medical procedures rejected, prohibited and never authorized by Mr. Scalabrini. That (First) Billing Notice directed Mr. Scalabrini make payment to "Gulf Breeze Hospital." Baptist did nothing to determine whether or not the medical procedures at issue were rejected, prohibited and unauthorized by Mr. Scalabrini before sending the First Billing Notice.

21. Approximately 8 times between November 18, 2017 and December 20, 2017, Baptist called Mr. Scalabrini and left pre-recorded messages ("the Pre-Recorded Messages") from "Gulf Breeze Hospital", again seeking more of the cost of the unauthorized medical procedures rejected, prohibited and never authorized by Mr. Scalabrini. Those Pre-Recorded Messages directed Mr. Scalabrini to call about amounts owed to Gulf Breeze Hospital.

22. On or around December 4, 2017, Baptist sent Mr. Scalabrini a "Gulf Breeze Hospital" another "Billing Notice" for more of the cost of the unauthorized medical procedures rejected, prohibited and never authorized by Mr. Scalabrini. That (Second) Billing Notice directed Mr. Scalabrini make payment to "Gulf Breeze Hospital." Baptist did nothing to determine whether or not the medical procedures at issue were rejected, prohibited and unauthorized by Mr. Scalabrini before sending the Second Billing Notice.

23. Despite the First Dispute Notice, neither Gulf Coast nor Baptist did anything to

determine whether or not the medical procedures at issue were rejected, prohibited and unauthorized by Mr. Scalabrini. Despite failing to do so, on or around December 15, 2017, Gulf Coast sent (and Baptist caused to be sent) the "Third Collection Notice" for some of the cost of the unauthorized medical procedures rejected, prohibited and never authorized by Mr. Scalabrini.

24. On or around January 17, 2018, Mr. Scalabrini sent (and shortly thereafter, Gulf Coast received) the "Second Dispute Notice" – informing Gulf Coast (and Baptist) that the debt was illegitimate, and the monies were not owed because "I will not pay for surgery I did not authorize or for required follow-up care. Be advised that this is the second letter I have written in response to the same issues and the same alleged debt."

25. Despite the First and Second Dispute Notices, neither PMAB, nor Gulf Coast, nor Baptist did anything to determine whether or not the medical procedures at issue were rejected, prohibited and unauthorized by Mr. Scalabrini. Despite failing to do so, on or around June 4, 2018, PMAB sent (and Baptist caused to be sent) the "Fourth Collection Notice" for more of the cost of the unauthorized medical procedures rejected, prohibited and never authorized by Mr. Scalabrini.

26. On or around June 30, 2018, Mr. Scalabrini sent (and shortly thereafter, PMAB received) the "Third Dispute Notice" – informing PMAB (and Baptist) that the debt was illegitimate, and the monies were not owed because "As I stated in two prior letters, *I will not pay for surgery I did not authorize or for required follow-up care.*"

27. Despite the First, Second and Third Dispute Notices, neither PMAB, nor Gulf Coast, nor Baptist did anything to determine whether or not the medical procedures at issue were rejected, prohibited and unauthorized by Mr. Scalabrini. Despite failing to do so, on or around July 12, 2018, PMAB sent (and Baptist caused to be sent) a "Settlement Offer" for ½ the cost of

some of the unauthorized medical procedures rejected, prohibited and never authorized by Mr. Scalabrini.

28. The First, Second, Third and Fourth Collection Notices; the First, Second and Third Dispute Notices; the Patient Statement of Account; the Billing Notices; the Pre-Recorded Messages; and the Settlement Offer are all attached hereto.

29. Despite being notified *multiple times in writing* that the alleged debt was not owed (because the medical procedures were rejected, prohibited and never authorized by Mr. Scalabrini), PMAB, Gulf Coast and Baptist continued their efforts to collect the alleged debt.

30. Subsequently, PMAB, Gulf Coast and Baptist falsely reported the alleged debt to various credit reporting agencies – thereby damaging Mr. Scalabrini's credit.

## FDCPA CLAIMS

31. Mr. Scalabrini incorporates all of his allegations in Paragraphs 1-30 as if fully rewritten herein.

32. PMAB, Gulf Coast and Baptist violated the FDCPA by disclosing to a person other than Mr. Scalabrini (or his family) information affecting Mr. Scalabrini's reputation -- with knowledge that the information was false. In addition, Baptist and Gulf Coast also violated the FDCPA by the 8 Pre-Recorded Messages.

33. PMAB, Gulf Coast and Baptist violated the FDCPA by attempting to collect amounts PMAB, Gulf Coast and Baptist knew were not owed and falsely reporting those amounts to credit agencies as being owed.

34. As a direct and proximate result of PMAB's, Gulf Coast's and Baptist's conduct in violation of the FDCPA, Mr. Scalabrini suffered damages. As a direct and proximate result of PMAB's, Gulf Coast's and Baptist's conduct, Mr. Scalabrini is also entitled to statutory

7

damages, costs and attorney's fees.

## NYCRR CLAIMS

35. Mr. Scalabrini incorporates all of his allegations in Paragraphs 1-34 as if fully rewritten herein.

36. Defendants Gulf Coast and PMAB are "debt collectors" as defined in 23 NYCRR §1.1(e).

37. To the extent PMAB, Gulf Coast and Baptist violated the FDCPA (as set forth above), they also violated the NYCRR.

38. In addition, Gulf Coast violated the NYCRR by failing to provide the notice required by 23 NYCRR §1.2(a)(2).

39. In addition, PMAB violated the NYCRR by failing to provide the notice required by 23 NYCRR §1.2(b). Instead, PMAB identified the fictitious entity Gulf Breeze Hospital as the creditor.

## CLASS ACTION ALLEGATIONS

40. Mr. Scalabrini incorporates all of his allegations in Paragraphs 1-39 as if fully rewritten herein.

41. It was the policy and practice of PMAB, Gulf Coast and Baptist to disclose to people other than the (alleged) debtors (or their families) information affecting the debtors' reputations – despite knowledge the information was false.

42. It was the policy and practice of PMAB, Gulf Coast and Baptist to send (or cause to be sent) mass-mailed collection letters – similar to the Collection Notices – attempting to collect amounts they knew were not owed and falsely reporting to credit agencies that those amounts were owed.

43. It was the policy and practice of Gulf Coast and Baptist to send repeated pre-recorded messages with the intent to annoy, abuse or harass (alleged) debtors.

44. This action is brought on behalf of an FDCPA class consisting of (i) all persons to whom letters substantially in the form of the Collection Notices were sent during the one year period prior to the date of filing this lawsuit (ii) in an attempt to collect a debt incurred for personal, family, or household purposes as demonstrated by the records of PMAB, Gulf Coast and Baptist (iii) which were not returned as undelivered by the U.S. Post Office and (iv) for which services by Baptist that were rejected, prohibited or unauthorized.

45. This action is brought on behalf of a second FDCPA class consisting of (i) all persons to whom letters substantially in the form of the Collection Notices were sent (ii) in an attempt to collect a debt incurred for personal, family, or household purposes as demonstrated by the records of PMAB, Gulf Coast and Baptist (iii) which were not returned as undelivered by the U.S. Post Office (iv) for which services by Baptist that were rejected, prohibited or never authorized; and (v) which were reported as legitimate debts to credit reporting agencies during the one year period prior to the date of filing this lawsuit.

46. This action is brought on behalf of a third FDCPA class consisting of (i) all persons to whom more than 3 pre-recorded messages substantially-similar to the Pre-Recorded Messages were sent within any one month period during the one year period prior to the date of filing this lawsuit (ii) in an attempt to collect a debt incurred for personal, family, or household purposes as demonstrated by the records of Gulf Coast and Baptist (or their phone companies).

47. This action is also brought on behalf of a NYCRR class consisting of (i) all persons to whom letters substantially in the form of the Collection Notices were sent to New York addresses during the one year period prior to the date of filing this lawsuit (ii) in an attempt

to collect a debt incurred for personal, family, or household purposes as demonstrated by the records of PMAB, Gulf Coast and Baptist (iii) which were not returned as undelivered by the U.S. Post Office and (iv) which, in the case of Gulf Coast, the Collection Notices failed to provide the notice required by 23 NYCRR §1.2(a)(2) OR, in the case of PMAB, the Collection Notices failed to notice required by 23 NYCRR §1.2(b).

48. Plaintiff alleges, upon information and belief and based on the nature of Defendants' businesses that the class is so numerous that joinder of all members is impractical.

49. There are questions of law and fact common to the class, which common issues predominate over any issues involving only individual class members.

50. Plaintiff's claims are typical of those of the class members.

51. Plaintiff will fairly and adequately protect the interests of the class. He has retained counsel experienced in handling actions involving unlawful practices under the FDCPA and class actions. Neither Plaintiff nor his counsel have any interests which might cause them not to vigorously pursue this action or which would conflict with any other class member.

52. Certification of a class under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that Defendants have acted on grounds generally applicable to the class thereby making appropriate declaratory relief with respect to the class as a whole.

53. Certification of the class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is appropriate in that:

(1) The questions of law or fact common to the members of the classes predominate over any questions affecting an individual member;

(2) A class action is superior to other available methods for the fair and efficient adjudications of the controversy. Because the damages suffered by individual class members

may be relatively small, the expense of individual actions is impracticable. Individual actions also present a risk of inconsistent decisions. There will be no difficulty in the management of this action as a class. Identification of individual class members can be determined from Defendants' records.

WHEREFORE, Mr. Scalabrini (and the class) requests judgment be entered in his favor against Defendants for:

A. Actual and/or compensatory damages;

B. Statutory damages pursuant to 15 U.S.C. §1692k of $1000 per violation;

C. Class damages of the lesser of $500,000 or 1% of each Defendant's net worth pursuant to 15 U.S.C. §1692k;

D. Declaratory judgment that the above described practices of Defendants violate the FDCPA and NYCRR;

E. Costs and reasonable attorneys' fees pursuant to 15 U.S.C. §1692k; and

F. For such other relief as the Court may find just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

GRANT & LONGWORTH, LLP

By: /George N. Longworth, Esq.
Attorney for Plaintiff
377 Ashford Avenue
Dobbs Ferry, New York 10522
(914) 479-5804

CL2:487409_v1