UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GINO J. SCALABRINI, on behalf of himself and all
others similarly situated,

                      Plaintiff,

   -against-

PMAB, LLC; BAPTIST HOSPITAL, INC.; and GULF
COAST COLLECTION BUREAU, INC.,

                  Defendants.

No. 18-cv-11152 (NSR)
OPINION & ORDER

NELSON S. ROMÁN, United States District Judge

    Plaintiff Gino Scalabrini initiated this putative class action against Defendants PMAB,

LLC ("PMAB"), Baptist Hospital, Inc. ("Baptist"), and Gulf Coast Collection Bureau, Inc. ("Gulf

Coast"), alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.*

("FDCPA"), and New York law. (ECF No. 1.) Baptist now moves to dismiss the Complaint

pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to transfer this case to

the Northern District of Florida, Pensacola Division, pursuant to 28 U.S.C. §§ 1404(a) and 1406(a).

(ECF No. 25.) PMAB and Gulf Coast join in the portion of Baptist's motion seeking to transfer

the case to Florida. (ECF No. 22.) For the reasons stated below, Baptist's motion is GRANTED

IN PART, and PMAB and Gulf Coast's motion is DENIED.

## BACKGROUND

    The following facts are derived from the Complaint unless otherwise noted and are

accepted as true for purposes of this motion.

    Plaintiff, a resident of Brewster, New York, received medical treatment at Gulf Breeze

Hospital, "aka Baptist Gulf Breeze Hospital" ("GBH"), in Santa Rosa County, Florida, on an

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/3/2020

1

unspecified date.  (Compl. ¶ 2.)  GBH is a fictitious entity owned and operated by Baptist.  (*Id.* ¶ 4.)  Plaintiff states that the treatment performed at GBH included the provision of unauthorized, illegal medical procedures, done without his consent and directly contrary to his instructions.  (*Id.* ¶ 2.)

On July 3, 2017, Plaintiff received a collection notice for some of the cost of the unauthorized medical procedures.  (*Id.* ¶ 16.)  The Notice was sent by PMAB, and "caused to be sent" by Baptist.  (*Id.*)  On August 1, 2017, Plaintiff sent a dispute notice to PMAB, informing PMAB and Baptist that he would "not pay for surgery [he] did not authorize, including the required postoperative day 1 visit of December 16, 2016."  (*Id.* ¶ 17.)  On August 14, 2017, Baptist provided a patient statement of account to PMAB, directing Plaintiff to make payments to GBH.  (*Id.* ¶ 18.)  On August 17, 2017, PMAB sent Plaintiff a second collection notice.  (*Id.* ¶ 19.)

On October 25, 2017, and December 4, 2017, Baptist sent Plaintiff two separate GBH Billing Notices directing Plaintiff to make payment for more of the cost of the unauthorized medical procedures to GBH.  (*Id.* ¶¶ 20, 22.)  Approximately eight times between November 18, 2017, and December 20, 2017, Baptist called Plaintiff and left pre-recorded messages on behalf of GBH, again seeking more of the cost of the unauthorized medical procedures.  (*Id.* ¶ 21.)  The messages directed Plaintiff to call about amounts owed to GBH.  (*Id.*)

On December 15, 2017, Gulf Coast sent, and Baptist caused to be sent, a third collection notice to Plaintiff.  (*Id.* ¶ 23.)  On January 17, 2018, Plaintiff sent Gulf Coast a second dispute notice, again stating that he would not pay for unauthorized surgery or follow-up care.  (*Id.* ¶ 24.)  On June 4, 2018, PMAB sent a fourth collection notice to Plaintiff.  (*Id.* ¶ 25.)  In response, Plaintiff sent a third dispute notice reiterating the assertions in his first two dispute notices.  (*Id.* ¶ 26.)  On

July 12, 2018, PMAB sent a "settlement offer" to Plaintiff seeking half the cost of the medical care provided by Baptist.  (*Id.* ¶ 27.)

Plaintiff avers that none of the Defendants investigated his claims that the procedures he was being charged for were unauthorized, even though he provided such claims in writing on three separate occasions.  (*Id.* ¶ 27.)  Instead, Defendants continued their efforts to collect the alleged debt.  (*Id.* ¶ 29.)  Defendants also reported the alleged debt to various credit reporting agencies, thereby damaging Plaintiff's credit.[1]  (*Id.* ¶ 30.)

Plaintiff filed the instant Complaint alleging that Defendants violated the FDCPA by (1) leaving eight pre-recorded debt collection messages; (2) attempting to collect amounts that were not owed; and (3) disclosing information regarding Plaintiff's debt to credit reporting agencies, knowing the information was false.  (*Id.* ¶¶ 32-33.)  Plaintiff further alleges that Defendants violated 23 NYCRR § 1.2(a) and (b).  (*Id.* ¶¶ 37-38.)  Plaintiff brings the foregoing claims on behalf of himself and a purported class of debtors.  (*Id.* ¶¶ 40-53.)

## STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), the inquiry is whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *accord Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."  *Id.* at 679.  To survive a motion to dismiss, a complaint must supply "factual allegations sufficient 'to raise a right to relief above the speculative level.'"  *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98

---

[1]     Although Plaintiff claims that the collection notices, dispute notices, statement of account, billing notices, pre-recorded messages, and settlement offer are attached to the Complaint, (Compl. ¶ 28), a review of the docket reveals that no such attachments were included in Plaintiff's filing.

(2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). The Court must take all material factual allegations as true and draw reasonable inferences in the non-moving party's favor, but the Court is "'not bound to accept as true a legal conclusion couched as a factual allegation,'" or to credit "mere conclusory statements" or "[t]hreadbare recitals of the elements of a cause of action." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). In determining whether a complaint states a plausible claim for relief, a district court must consider the context and "draw on its judicial experience and common sense." *Id*. at 662. A claim is facially plausible when the factual content pleaded allows a court "to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678.

## DISCUSSION

### I.    FDCPA

Congress enacted the FDCPA, in part, "to eliminate abusive debt collection practices" and "protect consumers from deceptive or harassing actions taken by debt collectors." 15 U.S.C. § 1692; *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 93 (2d Cir. 2012) (internal citations omitted); *see Vincent v. The Money Store*, 736 F.3d 88, 101 (2d Cir. 2013) (citing *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir.1989) ("Congress painted with a broad brush in the FDCPA to protect consumers from abusive and deceptive debt collection practices."). To achieve these ends, the FDCPA imposes, "among other things, notice and timing requirements on efforts by 'debt collectors' to recover outstanding obligations." *Goldstein v. Hutton, Ingram, Yuzek, Gainen, Carroll & Bertolotti*, 374 F.3d 56, 58 (2d Cir. 2004). Pursuant to Section 1692k of the FDCPA, "any debt collector who fails to comply with any provision of [the FDCPA] with respect to any person is liable to such person." 15 U.S.C. § 1692k.

Thus, to state a claim under the FDCPA, a plaintiff must demonstrate that: (1) the plaintiff is a person who was the object of efforts to collect a consumer debt; (2) the defendant is a debt

collector as defined in the statute; and (3) the defendant has engaged in an act or omission in violation of the FDCPA. *Cohen v. Ditech Fin. LLC*, 15-CV-6828, 2017 WL 1134723, at *5 (E.D.N.Y. Mar. 24, 2017) (citing *Scaturro v. Northland Grp.*, No. 16-CV-1314, 2017 WL 415900 at *2 (E.D.N.Y. Jan. 9, 2017)). In evaluating potential violations of the FDCPA, courts must apply an objective standard based on whether the "least sophisticated consumer" would be deceived by the collection practice. *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993). The "least sophisticated consumer" standard is consistent with the overall purpose of the FDCPA, which is to limit harassing, misleading, and deceptive contacts and communications with or about consumer debtors.

Baptist and Plaintiff primarily dispute whether Plaintiff has sufficiently pleaded that Baptist, the creditor, may be deemed a debt collector subject to the FDCPA.

### 1. False Name Exception

The term "debt collector" is defined by the FDCPA as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another." 15 U.S.C. § 1692a(6). Conversely, a creditor under the FDCPA is, in relevant part, an entity that "extends credit creating a debt or to whom a debt is owed." *Id.* § 1692a(4).

As a general rule, creditors are not subject to the FDCPA. *Maguire v. Citicorp. Retail Servs., Inc.*, 147 F.3d 232, 234 (2d Cir. 1998); *see also Mazzei v. Money Store*, 349 F. Supp. 2d 651, 658 (S.D.N.Y. 2004) ("Such a rule makes sense given that creditors already have a strong incentive to refrain from badgering their customers about overdue debts." (citations omitted)). However, a creditor becomes subject to the FDCPA if the creditor "in the process of collecting his

own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts." 15 U.S.C. § 1692a(6); *see also Maguire*, 147 F.3d at 234. Thus, the FDCPA's so-called "false name exception" requires three elements to be satisfied before deeming a creditor a debt collector: "(1) the creditor is collecting its own debts; (2) the creditor 'uses' a name other than its own; and (3) the creditor's use of that name falsely indicates that a third person is 'collecting or attempting to collect' the debts that the creditor is collecting." *Vincent*, 736 F.3d at 98. "The false name exception aims to prevent deceit as to who is actually collecting the debt." *Mazzei*, 349 F. Supp. 2d at 658 (citing *Maguire*, 147 F.3d at 236).

"Although a creditor need not use its full business name or its name of incorporation to avoid FDCPA coverage, it should use the 'name under which it usually transacts business, or a commonly used acronym,' . . . or any name that it has used from the inception of the credit relation." *Maguire*, 147 F.3d at 235 (quoting Federal Trade Commission Statements of General Policy or Interpretation Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097, 50107 (1988)) (citing *Dickenson v. Townside T.V. & Appliance, Inc.*, 770 F. Supp. 1122, 1128 (S.D.W. Va. 1990)). The key question in determining when a creditor's use of a different name gives rise to FDCPA liability is whether, under the least sophisticated consumer standard, a consumer would be deceived into believing that a debt collection effort was being made by an unrelated third party. *See Maguire*, 147 F.3d at 236 (applying the "least sophisticated consumer" standard to find considerable evidentiary support that creditor used "name other than its own" to collect debt); *Lorenz v. GE Capital Retail Bank*, 944 F. Supp. 2d 220, 225 (E.D.N.Y. 2013) (noting standard is applicable where creditor attempts to collect debt using name other than its own).

### 2. Applicability of FDCPA to Baptist

Plaintiff alleges in the Complaint that Defendants are "debt collectors" as defined by 15 U.S.C. § 1692a(6). (Compl. ¶¶ 8, 14.) Beyond that conclusory assertion, however, there does not appear to be any genuine dispute that Baptist's principal purpose is not to collect debts; rather, Baptist is a creditor under the FDCPA's definition of the term. (*See id.* ¶¶ 2, 4 (describing Baptist as the provider of the allegedly unauthorized medical procedures to Plaintiff and the owner and operator of GBH); ¶ 10 (stating that Baptist performed medical procedures on Plaintiff and then attempted to "unlawfully harass [Plaintiff] into paying" for them, including by "sick[ing] collection agencies PMAB and Gulf Coast" on Plaintiff); ¶ 13 (describing the alleged debt at issue as a debt owed to Baptist by Plaintiff).) Plaintiff's only legal basis for holding Baptist liable under the FDCPA is the false name exception. (*See id.* ¶ 10 ("Defendant Baptist uses the fictitious name Gulf Breeze Hospital to indicate that a third person is collecting or attempting to collect on debts.").)

To that end, Plaintiff cites two types of collection efforts Baptist engaged in. *First*, Baptist called Plaintiff and left pre-recorded messages on eight occasions seeking unpaid medical costs from Plaintiff. (Compl. ¶ 21.) In those messages, Baptist identified itself as GBH and stated that the outstanding costs were owed to GBH. (*Id.*) *Second*, Baptist sent two billing notices to Plaintiff directing him to make payment to GBH. (*Id.* ¶¶ 20, 22.) Although the billing notices are not attached to the Complaint, Plaintiff attaches them as exhibits to his opposition papers.[2] (*See* Pl.'s Opposition to Motion to Dismiss ("Pl. Opp.") (ECF No. 24) Ex. A.) The billing notices list GBH

---

[2] The Court may take judicial notice of the billing notices on a motion to dismiss because they are incorporated by reference into the Complaint. *See ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (The Court "may consider any written instrument attached to the complaint, statements or documents incorporated into the complaint by reference, . . . and documents possessed by or known to the plaintiff and upon which it relied in bringing the suit.").

at the top left-hand corner, and the return stub at the bottom of the notices invites Plaintiff to return

payment to GBH. (*Id.*) Baptist is mentioned once on the first billing notice, in a message reading,

"Thank you for choosing Baptist Health Care. If you have any questions, please contact our billing

office." (*Id.*) The notices also include an online payment option at "ebaptisthealthcare.org." (*Id.*)

Baptist contends that its use of the GBH name in its debt collection efforts would not have

misled the least sophisticated consumer into believing that it was using a third-party to collect its

debts. On the facts before it,[3] the Court agrees.

According to Plaintiff, "Baptist owns and operates the fictitious entity Gulf Breeze Hospital

(aka Baptist Gulf Breeze Hospital)." (Compl. ¶ 4.) Baptist does not dispute that GBH is, in fact,

"an appropriately-registered fictitious name for [Baptist]" under Florida law. (Baptist's Mem. in

Support of Motion to Dismiss ("Baptist Mot.") (ECF No. 26) 4.)[4] Plaintiff further states that the

medical procedures underlying the bills at issue in this case were performed at GBH. (Compl. ¶

4.) By Plaintiff's own account, Baptist consistently used the fictitious name GBH in its debt

collection communications with Plaintiff, and consistently informed Plaintiff that the debt was

owed for services provided by GBH. (Compl. ¶¶ 18, 20, 21, 22.)

As the Court has noted, a creditor does not become liable under the false name exception

solely because it uses something other than its legal name in its debt collection efforts. *See*

*Maguire*, 147 F.3d at 235 (noting that "a creditor need not use its full business name or its name

---

[3]      Except where specifically noted, the Court has not considered the additional materials attached to the parties' moving papers.

[4]      Indeed, public records indicate that the GBH name is an active fictitious name owned by Baptist. (Baptist Mot. Exs. 2-3, *available at* http://dos.sunbiz.org/scripts/ficidet.exe?action=DETREG&docnum=G11000004 0763&rdocnum=G11000040763.) The Court may take judicial notice of these public records to establish their existence and legal effect, as there is no dispute as to their accuracy or authenticity. *See Singleton v. Fifth Generation, Inc.*, 15-CV-474, 2016 WL 406295, at *3 (N.D.N.Y. Jan. 12, 2016) (label registration and approval documents were suitable for notice because they were matters of public record and no party disputed their authenticity or accuracy); *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 166 (S.D.N.Y. 2015) ("Courts routinely take judicial notice" of documents retrieved from official government websites (citing cases)).

of incorporation to avoid FDCPA coverage"). The relevant question is whether the least sophisticated consumer, in seeing a different name, would have the false impression that a third party was collecting the debt. *Id.* at 236.

Here, Plaintiff has alleged facts indicating that Baptist used the name GBH consistently since the inception of its credit relationship with Plaintiff. Every communication described in the Complaint as having been initiated by Baptist was done in the name of GBH. (*See* Compl. ¶¶ 20-22; Pl. Opp. 4.) Plaintiff describes GBH as the entity where the medical procedures giving rise to Baptist's debt collection efforts were performed. (Compl. ¶ 4.) Moreover, GBH is the registered fictitious name of Baptist. (*Id.*)

The Court fails to discern how Plaintiff's being the subject of collection efforts made under the name of the hospital where he was treated would have given Plaintiff the impression that GBH was a third-party debt-collector, rather than the creditor. To be sure, Plaintiff makes no allegation in the Complaint that he was, in fact, confused. *See Franceschi v. Mautner-Glick Corp.*, 22 F. Supp. 2d 250 (S.D.N.Y. 1998) (dismissing FDCPA claim against building owner where plaintiff "d[id] not even allege that he suffered confusion as to the relationship between" the owner and the management agent who sent a collection letter to plaintiff). Plaintiff states only that "Baptist uses the fictitious name Gulf Breeze Hospital to indicate that a third person is collecting or attempting to collect . . . debts [owed to Baptist]." (Compl. ¶ 9.) Contrary to Plaintiff's assertions, (Pl. Opp. 4), this bare conclusion of law is not enough to preclude dismissal of his claims against Baptist.

These defects are not cured by Plaintiff's novel contention in his opposition that the billing notices sent to Plaintiff "create confusion by suggesting Baptist is a third-party billing processor for [GBH]." (Pl. Opp. 4.) Plaintiff fails to explain why any reasonable consumer, after receiving billing notices purportedly from GBH, seeking payment for services provided by GBH, and

directing payment to GBH addresses only, would conclude that Baptist, an entity that is not even mentioned in the second notice, was GBH's third-party debt collector.[5]

To the extent that Plaintiff argues a creditor becomes liable under the FDCPA whenever there is confusion as to the creditor's true business name or name of incorporation, Plaintiff misstates the standard announced in *Maguire*. Pursuant to *Maguire*, it is permissible for a creditor to use a name other than its own in debt collection efforts as long as use of the name could not mislead the consumer into believing that an unrelated third party was attempting to collect a debt on behalf of the creditor. *Maguire*, 147 F.3d at 235-36. That Plaintiff may not have known that GBH was associated with Baptist does not help his claim here, because he asserts no facts supporting a conclusion that he rationally thought Baptist was making collection efforts on behalf of GBH. In other words, Plaintiff does not plausibly allege that he was misled into believing that the calls and notices he received were coming from a third-party unrelated to the creditor.

For all of the foregoing reasons, Plaintiff's FDCPA claims against Baptist fail. The Court GRANTS Baptist's motion to dismiss Plaintiff's FDCPA claims against it.

## II. NYCRR Claims

Baptist argues that Plaintiff's state law claims pursuant to 23 NYCRR § 1 should be dismissed because the regulation does not apply to creditors and does not give rise to a private cause of action. Plaintiff does not oppose dismissal of his state law claims.

---

[5]     Even if Plaintiff were somehow confused as to the identity of the sender of the billing notices, or the relationship between GBH and Baptist, the public website listed on the notices for payment options could not be clearer. As a preliminary matter, the Court may take judicial notice of the website as it is publicly available and the website's authenticity is not in dispute. *See Wells Fargo Bank*, 127 F. Supp. 3d at 167 (citing cases). The homepage of the Baptist website contains a multitude of information and links regarding healthcare offered by Baptist, and nothing in the nature of bill-collection other than a "Patient Financial Resources" portal. Moreover, GBH is listed as a "location" under the Baptist Health Care umbrella. *See* BAPTIST HEALTH CARE (Feb. 25, 2020), https://www.ebaptisthealthcare.org.

Accordingly, for the reasons presented by Baptist, the Court GRANTS Baptist's motion to dismiss Plaintiff's New York state law claims against it.

## III.  Venue

Remaining Defendants PMAB and Gulf Coast move pursuant to 28 U.S.C. § 1404(a), for an order transferring this case to the Northern District of Florida.  (*See* PMAB and Gulf Coast's Mem. in Support of Mot. to Transfer ("PMAB/Gulf Coast Mot.") (ECF No. 23) 1-2 ("Should this Court dismiss this action with prejudice against Defendant Baptist . . . pursuant to Fed. R. Civ. P. 12(b)(6), Defendants respectfully submit that this Court should still transfer the remaining claims against Defendants in this action to the United States District Court for the Northern District of Florida – Pensacola Division . . .").)[6]

28 U.S.C. § 1404(a) provides that:

> [f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.
> 28 U.S.C. § 1404(a).

On a motion to transfer, a court must perform a two-part inquiry.  *Winter v. Am. Institute of Med. Sciences & Educ.*, 242 F. Supp. 3d 206, 213 (S.D.N.Y. 2017).  First, the court must determine whether the action could have been brought in the proposed transferee forum.  *See AEC One Stop Grp. v. CD Listening Bar*, 326 F. Supp. 2d 525, 528 (S.D.N.Y. 2004) ("The threshold question of deciding transfer of venue . . . is whether the action could have been brought in the transferee forum.").

---

[6]  PMAB and Gulf Coast do not raise any arguments in addition to those made by Baptist.  Rather, they "adopt and incorporate by reference all of Defendant Baptist['s] . . . arguments that this case should be transferred to the Northern District of Florida, Pensacola Division . . . .  Specifically, Baptist . . . asserts that the Pensacola Division is the appropriate venue because a substantial part of the events giving rise to the Plaintiff's claims occurred there."  (PMAB/Gulf Coast Mot. 1.)

Assuming the threshold issue is satisfied, a court must consider whether transfer is appropriate. Such a determination is arrived at by weighing a non-exhaustive list of factors, including: (1) the plaintiff's choice of forum; (2) the convenience of the witnesses; (3) the location of relevant documents and relative ease of access to sources of proof; (4) the convenience of the parties; (5) the locus of operative facts; (6) the availability of process to compel the attendance of unwilling witnesses; (7) the relative means of the parties; (8) the forum's familiarity with the governing law; and (9) trial efficiency and the interests of justice. *See, e.g.*, *N.Y. Marine and Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102, 112 (2d Cir. 2010); *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 106-07 (2d Cir. 2006); *Larew v. Larew*, No. 11-CV-5771 (BSJ) (GWG), 2012 WL 87616, at *3 (S.D.N.Y. Jan. 10, 2012).

"No one factor is dispositive and the relative weight of each factor depends on the particular circumstances of the case." *Winter*, 242 F. Supp. 3d at 213 (quoting *Smart Skins v. Microsoft*, No. 14-CV-10149, 2015 WL 1499843, at *4 (S.D.N.Y. Mar. 27, 2015)). A district court has "broad discretion in making determinations of convenience under Section 1404(a) and notions of convenience and fairness are considered on a case-by-case basis." *D.H. Blair*, 462 F.3d at 106. It is the burden of the moving party "to make a 'clear and convincing' showing that transfer" is proper. *Atl. Recording v. Project Playlist*, 603 F. Supp. 2d 690, 695 (S.D.N.Y. 2009).

### 1. Possibility of Bringing Action in Proposed Transferee District

Defendants initially argue that Plaintiff could have brought the instant action in the Northern District of Florida (the "proposed transferee district"). Under 28 U.S.C. § 1391(b), venue is proper (1) in a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located; (2) in a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is

the subject of the action is situated; or (3) if there is no district in which an action may otherwise be brought, in any judicial district in which any defendant is subject to the court's personal jurisdiction.

Here, the relevant question is whether a substantial part of the events giving rise to Plaintiff's claims arose in the Northern District of Florida.[7] The collection notices sent by PMAB came from Charlotte, North Carolina, and the notices sent by Gulf Coast came from Sarasota, Florida, which is in the Middle District of Florida. (Pl. Opp. 6, Exs. B, C.) Plaintiff contends that for these reasons, there is no proper venue in the Northern District of Florida. However, this overlooks the fact that all of Plaintiff's FDCPA claims are premised on Plaintiff's allegation that the debts Defendants were trying to collect arose from unauthorized medical procedures in the Northern District of Florida.[8]

Since a substantial part, if not the most substantial part,[9] of the events giving rise to Plaintiff's claims took place in the Northern District of Florida, and no party disputes that the United States District Court for the Northern District of Florida would have personal jurisdiction over Defendants, the Court proceeds to consider whether transfer is appropriate in this case.

### 2. Appropriateness of Transfer

The burden of demonstrating the appropriateness of transfer by clear and convincing evidence lies with Defendants. After reviewing the arguments made in the parties' moving papers,

---

[7]     Since PMAB is a North Carolina corporation, not all Defendants are residents of Florida and 28 U.S.C. § 1391(b)(1) does not apply.

[8]     The Court further notes that all Defendants consent to venue in the Northern District of Florida.

[9]     "The venue statute . . . does not require venue in the district with the most substantial contacts to the dispute. Rather, it is sufficient that a substantial part of the events occurred in the challenged venue, even if a greater part of the events occurred elsewhere." *Astor Holdings, Inc. v. Roski*, No. 01 CIV. 1905 (GEL), 2002 WL 72936, at *8 (S.D.N.Y. Jan. 17, 2002) (citing David D. Siegel, Commentary on 1990 Revision of Subdivisions (a), (b), and (e) at 4, 28 U.S.C.A. § 1391 (Supp. 1993); *Bates v. C & S Adjusters, Inc.*, 980 F.2d 865 (2d Cir.1992)).

the Court concludes that Defendants have not met their burden.

### i.      Plaintiff's Choice of Forum

A plaintiff's choice of forum is "ordinarily given considerable weight and is disturbed only if the balance of convenience and justice weigh heavily in favor of defendant's proposed forum." *Tobey v. Nat'l Action Financial Servs.*, No. 09-CV-1917, 2009 WL 3734320, at *3 (E.D.N.Y. Nov. 4, 2009) (citing *Toy Biz, Inc. v. Centuri Corp.*, 990 F. Supp. 328, 330 (S.D.N.Y. 1998) (collecting cases)). However, a "plaintiff's choice of forum is a less significant consideration in a (here, putative) class action than an individual action." *In re Warrick*, 70 F.3d 736, 741 n.7 (2d Cir. 1995) (citation omitted). "The reason is that in a class action there will be numerous potential plaintiffs, each possibly able to make a showing that a particular forum is best suited for the adjudication of the class's claim." *Glass v. S & M Nutec, LLC*, 456 F.Supp.2d 498, 504 (S.D.N.Y. 2006). Nonetheless, "[a]ffording less deference to representative plaintiffs does not mean they are deprived of all deference in their choice of forum." *DiRienzo v. Philip Servs. Corp.*, 294 F.3d 21, 28 (2d Cir. 2002).

Plaintiff brings this action on behalf of three putative FDCPA classes of debtors who were subjected to Defendants' purportedly wrongful debt collection efforts. (Compl. ¶¶ 44-46.) Accordingly, the first venue factor weighs in Plaintiff's favor, but with less force than in other circumstances. *See Tobey*, 2009 WL 3734320, at *3.

### ii.      Convenience of Witnesses

Defendants have argued that "a significant number of witnesses are from the Northern District of Florida." (Baptist Mot. 20.) Only Baptist has identified any witnesses that would likely need to testify in this action. Although Baptist is no longer a party, the Court recognizes that Baptist witnesses are nonetheless likely to remain relevant to the claims remaining in this case. As

to PMAB and Gulf Coast, Plaintiff speculates that Charlotte, North Carolina is likely most convenient for witnesses from PMAB, and Sarasota, Florida is likely most convenient for witnesses from Gulf Coast. (Pl. Opp. 8.) However, neither PMAB nor Gulf Coast has provided any detail as to why the proposed transferee forum is more convenient for non-Baptist witnesses. New York is most convenient for Plaintiff, a resident of Brewster, New York. (Pl. Opp. 8.)

In light of the foregoing, and absent any factual demonstration by PMAB or Gulf Coast that their chosen forum is more convenient for any of their potential witnesses, this factor favors no party. *See Medien Patent Verwaltung AG v. Warner Bros. Entm't*, 749 F. Supp. 2d 188, 191 (S.D.N.Y. 2010) ("[w]hen a party seeks the transfer on account of the convenience of witnesses under [18 U.S.C. §] 1404(a), [they] must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." (internal quotation marks omitted)).

### iii.    Location of Relevant Documents

With respect to the location of documents, it is beyond dispute that some relevant documents related to Plaintiff's medical treatments and bills are located in the proposed transferee district. However, many other documents, such as the collection notices themselves, reside elsewhere. Even if this factor did favor transfer, courts do not typically view it as particularly significant "given the technological age in which we live, with the widespread use of, among other things, electronic document production." *Sarracco v. Ocwen Loan Servicing, LLC*, 220 F. Supp. 3d 346, 358 (E.D.N.Y. 2016) (citations omitted); *see Marshall v. Annucci*, No. 16-CV-8622(NSR), 2018 WL 1449522, at *12 (S.D.N.Y. March 22, 2018) (location of health records did not weigh in favor of transfer); *Winter v. Am. Inst. of Med. Scis. & Educ.*, 242 F. Supp. 3d 206, 217 (S.D.N.Y. 2017) ("Given electronic discovery, and absent any concrete illustration of inconvenience to either side relating to documents or other non-testimonial evidence, this factor is neutral"); *see also*

*Guardian v. Life Ins. Co. of Am. v. Hernandez*, No. 11-CV-2114 (SAS), 2011 WL 3678134, at *3 (S.D.N.Y. Aug. 22, 2011) (finding that this factor did not favor either side because modern technology has made the transportation of documents relatively easy). Accordingly, this factor is neutral.

### iv.    Convenience of Parties

The only party to this action that resides in the Northern District of Florida was Baptist, against whom all claims have been dismissed. However, in assessing this factor in the context of a putative class action, the Court must determine whether the proposed transferee district would be of greater convenience to the unnamed class members. *See Sebrow v. Zucker, Goldberg & Ackerman, LLC*, No. 10-CV-4767, 2012 WL 911552, at *4 (E.D.N.Y. March 16, 2012) (where plaintiff and defendant in putative class action disagree as to the most convenient forum, the "tie-breaker" is "what is of greater convenience to the unnamed class members of the putative class"); *Jones v. Walgreen Co.*, 463 F. Supp. 2d 267, 277 (D. Conn. 2006) (because plaintiff pursued her claims as a class action, the Court "must consider the interests of other class plaintiffs, who are located throughout the country" in assessing convenience of parties factor).

Defendants presume that the putative class will consist of individuals like Plaintiff who were treated at Baptist and then became subject to Defendants' debt collection efforts. Consequently, Defendants argue that since almost 90% of Baptist's patients are residents of Escambia and Santa Rosa counties in the Northern District of Florida, proceeding outside of that district, particularly as far away as the Southern District of New York, is "patently inconvenient." (Baptist Mot. 22.)

It is likely true that a class challenging the debt collection efforts of Baptist would consist predominantly, if not exclusively, of Baptist patients. Baptist is no longer a party to this action.

Nonetheless, it remains highly likely that many members of the class will be Baptist patients and Florida residents. Although Plaintiff disputes this, the Complaint itself purports to establish two classes of debtors who were targeted by Defendants in an attempt to collect debts "for which [sic] services by Baptist that were rejected, prohibited or unauthorized." (Compl. ¶¶ 44-45.)

In light of the foregoing, the Court finds that this factor weighs in favor of transfer.

### v.     Locus of Operative Facts

Defendants contend that since Plaintiff's Complaint "is apparently grounded on" his allegations of unauthorized medical care in Santa Rosa County, Florida, the locus of operative facts is the Northern District of Florida. (Baptist Mem. 22.) However, "the receipt of a collection notice is a substantial part of the events giving rise to a claim" under the FDCPA; indeed, a collection notice is "[t]he most relevant evidence" in a case alleging that such a notice violated the provisions of the FDCPA. *Bates*, 980 F.2d at 868. Further, many of the debt collection efforts at issue originated in places other than the Northern District of Florida. Accordingly, the Court finds that this factor is neutral.

### vi.     Availability of Process

Pursuant to Federal Rule of Civil Procedure 45, "a subpoena may be served at any place within the district of the court by which it is issued, or at any place without the district that is within 100 miles of the place of the . . . trial." It has not been alleged that any nonparty witness relevant to this case is located in or near the Southern District of New York. In contrast, Defendants point out that a "critical mass of likely witnesses resides in the Northern District of Florida." (Baptist Mot. 23.) However, Defendants have identified no non-party witness that they or Plaintiff would call at trial, let alone any indication that such non-party witness would be unwilling to testify in the Southern District of New York. The Court concludes that the availability of compulsory

process does not weigh strongly for or against transfer. *See Travelers Prop. Casualty Co. of Am. v. Ocean Reef Charters LLC*, 324 F. Supp. 3d 366 (W.D.N.Y. 2018) ([G]iven the lack of specific information regarding Plaintiff's proposed witnesses, and absent any indication that [Defendant]'s non-party witnesses would be unwilling to testify in this case," availability of compulsory process factor was neutral); *Fuji Photo Film Co., Ltd. V. Lexar Media, Inc.*, 415 F. Supp. 2d 370, 375 (S.D.N.Y. 2006) ("[B]ecause neither plaintiffs nor defendant indicate that any non-party witnesses will be called to testify, or that if they are called they will be unwilling to testify, this factor has no impact on the analysis."); *Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG*, 160 F. Supp. 2d 722, 743 (S.D.N.Y. 2001) ("It is worth noting here that [the defendant] appears only to surmise that these non-party witnesses will be unwilling to testify. As the Second Circuit has suggested, the unavailability of compulsory process is a less compelling factor where a defendant has not claimed that its potential witnesses would be unwilling to testify." (citing *Peregrine Myanmar Ltd. v. Segal*, 89 F.3d 41, 47 (2d Cir. 1996) ("[N]either side claims that any witness will be unwilling to testify."))).

### vii.    Relative Means of the Parties

"Where a disparity exists between the means of the parties, such as in the case of an individual suing a large corporation, the court may consider the relative means of the parties in determining where a case should proceed." *800-Flowers, Inc. v. Intercontinental Florist, Inc.*, 860 F. Supp. 128, 135 (S.D.N.Y. 1994). Defendants do not dispute that they are financially capable of litigating in this district. Plaintiff, a retired police officer, does not state he lacks the financial capacity to litigate in the proposed transferee district. However, absent any indication to the contrary, the Court assumes that Defendant corporations would be better able than the individual Plaintiff to shoulder the costs involved in litigating in a distant forum.

Defendants claim that although they have "certain means to defend these claims" as corporations, the fact that Plaintiff is an individual does not weigh in favor of Plaintiff because he has commenced a separate medical malpractice lawsuit against Baptist in Escambia County, Florida, relating to the medical treatment referenced in the Complaint. (Baptist Mot. 23.) That Plaintiff has demonstrated a willingness and ability to litigate a matter substantially related to the instant action in the proposed transferee forum indicates that transfer may be appropriate. *See Tobey*, 2009 WL 3734320, at *5 ("Where plaintiff has demonstrated a willingness to litigate in a distant court, courts have weighed this factor against maintaining the case in plaintiff's preferred forum." (citing *Frame v. Whole Foods Market, Inc.*, No. 06-CV-7058, 2007 WL 2815613, at *6 (S.D.N.Y. Sept. 24, 2007))); *Victory Records, Inc. v. Virgin Records Am., Inc.*, No. 08-CV-314, 2008 WL 11399488, at *2 (S.D.N.Y. July 2, 2008) (plaintiff's demonstration of "a past willingness to litigate these or substantially related claims" in proposed transferee district favored transfer). However, this consideration is mitigated by Plaintiff's assertion that he had no choice but to bring the related medical malpractice suit in Florida, since New York is not a proper venue for such claims. (*See* Pl. Opp. 9.)

Moreover, Defendants themselves have not provided any evidence to indicate that litigating in the Southern District of New York would cause them undue hardship, even if it may be more expensive than litigating in the Northern District of Florida. *See Travelers Prop. Casualty Co.*, 324 F. Supp. 3d at 383 (failure of either party to demonstrate through specific evidence that party's financial position would hamper ability to meaningfully litigate the case in a distant forum meant relative means factor was neutral); *Wilson v. DirectBuy, Inc.*, 821 F. Supp. 2d 510, 518-19 (D. Conn. 2011) (although defendant corporation would have higher burden litigating outside of

proposed transferee forum, defendant did not show that "burden would be undue," and relative means factor therefore did not tip in defendant's favor).

On the balance, the Court finds this factor to be neutral.

### viii. Forum's Familiarity with Governing Law

Plaintiff's claims raise questions of federal law, with which both this Court and the proposed transferee forum are equally familiar and equally capable of applying. This factor is neutral.

In sum, one factor weighs against transfer, six are neutral, and one weighs in favor of transfer to the Northern District of Florida.[10] Defendants have not shown by clear and convincing evidence that transfer is appropriate. Accordingly, their motion seeking transfer to the Northern District of Florida is DENIED.

### CONCLUSION

For the reasons stated above, Defendant Baptist Hospital, Inc.'s motion to dismiss the Complaint is GRANTED to the extent that the Complaint is dismissed against Baptist Hospital, Inc. in its entirety. The portion of Baptist's motion seeking to transfer venue, and the motion of Defendants PMAB, LLC, and Gulf Coast Collection Bureau, Inc., seeking the same, are DENIED. Defendants PMAB and Gulf Coast are directed to file their answers to the Complaint by April 3, 2020.

The Clerk of Court is respectfully requested to remove Baptist Hospital, Inc., from the

---

[10] Since neither party has briefed the issue of trial efficiency and the interests of justice, the Court assumes that this factor is neutral.

caption, and terminate the motions at ECF Nos. 22 and 25.


Dated:   March 3, 2020                          SO ORDERED:
         White Plains, New York

                                         _____
                                                  NELSON S. ROMAN
                                             United States District Judge